After giving notice of appeal to the Full Commission, plaintiff effectively abandoned her appeal. The Commission has not received any further word from plaintiff or her counsel although a position was reserved on the Full Commission calendar on the assumption that the appeal would be pursued. Although defendant has moved for a dismissal, the Full Commission has chosen to decide this case on its merits.
* * * * * * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based on the proceedings before Deputy Commissioner Edward Garner, Jr., along with defendant's brief and oral argument before the Full Commission. Plaintiff failed to file an Industrial Commission Form 44 or brief with the Full Commission and did not appear. The appealing party has not shown good ground to receive further evidence; reconsider the evidence; or to amend the Opinion and Award.
* * * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the plaintiff and defendant-employer.
3. Defendant-employer is self insured with Hewitt, Coleman Associates acting as the servicing agent.
4. Plaintiff's average weekly wage was $370.56, which yields a compensation rate of $247.05 per week.
5. Plaintiff suffered an injury by accident on 1 December 1992 resulting in a strain to her back.
6. Defendant-employer admitted liability and the parties entered into a Form 21 Agreement.
7. A Form 24 was approved by the Industrial Commission on 9 February 1993 terminating benefits to plaintiff.
8. The issues that were to be determined at the hearing before Deputy Commissioner Garner were whether the Form 24 should be set aside and temporary total disability benefits resumed and/or what additional medical treatment is plaintiff entitled to.
* * * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. On 1 December 1992 plaintiff was employed as a texturizing operator by defendant-employer. On that date, plaintiff suffered an injury by accident when she strained her back.
2. Plaintiff's version of her injury by accident significantly changed over time. The 1 December 1992 Frye Emergency Room medical notes indicate that plaintiff "stepped backward of[f] a buggy and caught [her]self; did not hit the floor." Dr. Eric Hart, who also treated plaintiff on 1 December 1992, recorded in his medical note a very similar account. Dr. Hart's note states, "Patient hurt back yesterday when she stepped off a ladder buggy. She didn't fall, but strained her back and was seen in the ER."
3. When plaintiff presented herself to Dr. Winfield on 15 December 1992 she stated that she had fallen on her right leg. Dr. Winfield's notes indicate that she stepped off a work buggy and missed the lower step, landing on her right leg evidently going into hyperextension of the back.
4. Plaintiff's version at the 6 June 1994 hearing before Deputy Commissioner Garner further evolved. She testified that she was standing on the top level of a four (4) step work buggy when she stepped off the top step and fell two and one half (2 1/2) to three (3) feet. She also testified, in contradiction to what she told her medical providers, that her hip hit the floor.
5. Dr. Hart treated plaintiff from 1 December 1992 to 11 December 1992 when he referred her to Dr. Winfield. When Dr. Winfield saw plaintiff on a follow up visit on 21 December 1992 he did not believe that anything bad was going on with her condition. Dr. Winfield told plaintiff she could return to her regular job on 4 January 1993. The tests performed by Dr. Wingfield indicate that he was convinced that plaintiff did not have a ruptured disk. He further stated that he didn't think there was anything further that needed to be done for her. At the 4 January 1993 visit, Dr. Winfield instructed plaintiff to contact him if she had further problems. However, plaintiff never contacted Dr. Winfield after that date.
6. Although plaintiff was released to return to full duties on 4 January 1993, she never attempted to return o work. On 8 January 1993 plaintiff went to the Catawba Memorial Hospital emergency room complaining of back pain. The emergency room records indicate that plaintiff had not objective findings for her problem, and she was referred to Dr. Simms. There is no record that plaintiff ever saw Dr. Simms.
7. The next time plaintiff sought medical treatment, 14 April 1993 was at the Catawba Memorial Hospital where she indicated that she re-injured her back when she fell off a stool at home.
8. Plaintiff later came under the treatment of Dr. Wilkinson and Dr. Mathis. Dr. Mathis first saw plaintiff on 5 May 1993 which was shortly after the accident at home. Plaintiff stated that she had fallen off a ladder approximately five (5) months ago while working with her husband at a construction site.
9. A CT scan was performed on 25 October 1993. The result of the CT scan was "diffuse disk protrusion L3/4 . . ., mild diffuse bulging L4/5, not lateralization, minimal central bulge at L5/S1 . . ." No where in Drs. Wilkinson and Mathis' medical notes does it indicate that plaintiff is disabled or should be out of work because of this "mild" or "minimal" bulging. Furthermore, there is no medical evidence that relates any of the problems that were discovered after the 25 April 1993 fall to the 1 December 1992 incident.
10. The 14 January 1994 medical note from Drs. Wilkinson and Mathis indicate that plaintiff has multiple level disk disease.
11. There is no medical evidence that plaintiff was disabled after 4 January 1994. Even if there is medical evidence that plaintiff is presently disabled, there is no causation evidence that indicates that any present disability is related to the workplace accident rather than the accident at home or plaintiff's disk disease.
12. Plaintiff did not return to Dr. Winfield, her authorized treating physician, after she was to return to him if she had further problems. Plaintiff did not seek further medical treatment after January 1993 until she fell off a stool at home in April of 1993.
13. Plaintiff failed to meet her burden of proof by not providing sufficient evidence that her present condition is causally related to her original injury by accident.
* * * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. It is the plaintiff's burden of proving not only the occurrence of and injury by accident but also that the disabling physical injury resulted therefrom. Lettley v. Trash RemovalService, 91 N.C. App. 625, 372 S.E.2d 747 (1988).
2. Since plaintiff did not carry the burden of proving that her present condition is causally related to the original injury, she is not entitled to further benefits under the North Carolina Workers' Compensation Act. G.S. § 97-2(6).
* * * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for further benefits is hereby DENIED.
2. Each side shall pay its own costs.
 S/ ______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER